UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH IRISH,

    Petitioner,                                    Hon. Paul L. Maloney

v.                                                       Case No. 1:08-CV-142

MARY BURGHUIS,

    Respondent.
_____/

### REPORT AND RECOMMENDATION

This matter is before the Court on Irish's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Irish's petition be **denied**.

### BACKGROUND

As a result of engaging in sexual intercourse with his step-daughter, K.W., Petitioner was charged with one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. (Hearing Transcript, February 4, 2005, 3, 13-14). Petitioner subsequently agreed to plead no contest to both counts pursuant to a *Cobbs* agreement.[1] (Tr. 17-29). Specifically,

---

[1] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court authorized a particular type of plea agreement in which the trial judge indicates (as part of the plea agreement) a proposed sentence; while the judge is not bound to impose this particular sentence, if he fails to do so the defendant retains the absolute right to withdraw his plea. *See Wright v. Lafler*, 2007 WL 2566042 at *1 (6th Cir., Sept. 5, 2007).

1

the trial judge indicated that in return for Petitioner's plea, he would impose a minimum sentence no greater than "the midpoint range" of the guideline sentence range. (Tr. 17-18). Petitioner asserted that he wished to plead no contest (as opposed to guilty) so as to avoid "potential civil liability." (Tr. 26). To establish a sufficient factual basis for Petitioner's plea, the parties stipulated to the facts as alleged in the police report. (Tr. 26-27). The trial court found that such were sufficient to establish Petitioner's guilt. (Tr. 26-27). Accordingly, Petitioner was found guilty of both charges. (Tr. 26-27).

On the conviction for first degree criminal sexual conduct, Petitioner was sentenced to serve 12-40 years in prison. (Sentencing Transcript, June 15, 2005, 26). Petitioner was sentenced to a concurrent sentence of 8-15 years in prison on the second degree criminal sexual conduct conviction. (Tr. 26-27). Asserting the following claims, Petitioner later moved in the Michigan Court of Appeals for leave to appeal his convictions:

> I. The Defendant-Appellant should be allowed to withdraw his plea based upon newly discovered evidence.
>
> II. The trial court erroneously denied the Defendant-Appellant's request for an adjournment at the time of sentencing.
>
> III. The Defendant-Appellant was ineffectively represented at the trial court level.
>
> IV. The Defendant-Appellant must be re-sentenced on the criminal sexual conduct in the second degree charge if his plea to the criminal sexual conduct in the first degree charge is withdrawn.

The Michigan Court of Appeals denied Petitioner's motion "for lack of merit in the grounds presented." *People v. Irish,* No. 270976, Order (Mich. Ct. App., July 28, 2006). Asserting

2

the same claims, Petitioner later moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Irish,* No. 132081, Order (Mich., Nov. 29, 2006). On February 11, 2008, Petitioner initiated the present action in which he asserts the four issues identified above.

## STANDARD OF REVIEW

Irish's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law

3

when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S.

4

at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins*

5

established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

I.  **Withdrawal of Guilty Plea and Adjournment of Sentencing** (Habeas Claims I-II)

Petitioner entered his pleas to the charges in question on February 4, 2005. On or about March 28, 2005, more than two months before Petitioner was sentenced, the victim allegedly drafted correspondence that, according to Petitioner, exonerates him of the charge of first degree criminal sexual conduct. (Dkt. #1, Att. B). At the outset of the sentencing proceeding, Petitioner's counsel moved for an adjournment because he "need[ed] more time" to discuss with Petitioner and his family several sentencing-related issues, including the aforementioned correspondence and Petitioner's sentencing guideline score. (Sentencing Transcript, June 15, 2005, 5-10). With respect to whether he desired to move to withdraw his no-contest plea, Petitioner stated that he declined to do so and instead wished to abide by the terms of his plea agreement. (Tr. 16-19). In his first habeas claim, Petitioner argues that he should be permitted to withdraw his no-contest plea "based upon newly discovered evidence." In his second habeas claim, Petitioner asserts that the trial court "abused its discretion" by denying his request for an adjournment.

A.  Withdrawal of Plea

As noted above, Petitioner did not move at sentencing (or prior thereto) to withdraw his no contest pleas. Instead, Petitioner raised the issue for the first time before the Michigan Court of Appeals. Petitioner obtained no relief in the state courts and now reiterates his claim that he should be permitted to withdraw his pleas. Petitioner does not assert that his pleas are invalid (under

6

either state or federal law), but instead argues that under Michigan law he should be entitled to withdraw his pleas due to newly discovered evidence which invalidates his conviction for first degree criminal sexual conduct. Petitioner's claim fails for several reasons.

To the extent that Petitioner is seeking relief based on an alleged violation of Michigan law, such cannot form the basis for the relief he seeks. *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging violations of the Constitution, laws, or treaties of the United States). Likewise, to the extent Petitioner is asking this Court to apply Michigan law and permit him to withdraw his plea, such claim also fails because this Court lacks jurisdiction to act in such a capacity. Even if Petitioner's claim did not face these hurdles, this claim would fail because the "newly discovered evidence" on which this claim is premised fails to establish (or even call into question) Petitioner's conviction for first degree criminal sexual conduct.

Petitioner's claim is based solely on an alleged correspondence from the victim in this case. The correspondence in question reads as follows:

> To whom this may concern:
>
> I have to tell you that I am a liar, to some extent. My name is [K.W.] and I charged my step-dad with rape and molestation in October. It is now March and I need to tell the truth as I have thought of doing for several months now. The molestation charges are real. Since the age of eight when he married my mom he has touched me inappropriately. I have never told because I was too scared. The part I lied about to some extent was the rape and the time frame of the sexual intercourse. It started in November of 2003. I was lonely, angry and very self-conscious. I had only had two boyfriends and both relationships had ended badly. The one had "cheated" on me and the other was only my boyfriend to get closer to one of my other friends. The guys at my school don't really consider me a girl, I'm just one of the guys to them. I felt like nobody liked me. Then Joe started paying attention to me, albeit in a way I never should have allowed. I didn't actually consent because I never really said yes but at that time I definitely didn't say no. After a couple months of this

> I began to get squeamish about what we were doing. I knew it was wrong. I tried to get him to stop but he didn't want to. He used to say he wished he could take me away from everyone else and that kind of scared me. I never wanted to hurt my mom. On April 4, 2004 I did tell him no and he didn't listen. I didn't fight him though because I didn't want to deal with his anger. When it didn't stop I started finding ways to avoid him. I really did want it to stop. I knew I was going to hurt my mom. If my mom hadn't noticed that I hadn't had my period in some time and if she hadn't kept bugging me about why I never would have told anyone about my pregnancy. My plan was to run away where hopefully nobody would find me and stay gone forever. But when my mom kept after me I knew I needed to tell. I didn't tell the truth then because I was so afraid my mom would hate me, it's a fear I especially have now knowing that she knows the whole truth. I have been living in my own little hell since October. I have had trouble sleeping and have become jumpy and short tempered. I have hurt my mom, my siblings, and now I am hurting all the people who have cared about me. I have lost the trust and respect of the one person I truly needed it from, my mom. I am unsure of how after I told her the truth she can still love me and live with me and look at me. I am so sorry I have waited this long to tell the truth. I only hope that I am in time to correct a major part of what I made wrong. I can no longer live with myself. I have committed one of the worst sins that God has forbidden us to. I hope that eventually everybody I've hurt can forgive me but I am unsure if I can forgive myself.

(Dkt. #1, Att. B).

First, Petitioner has failed to establish that this correspondence was even written by the victim. This correspondence is contained in an email sent from "BugerNugget2005@aol.com" to "mpeterson@childabusecouncil.org." Petitioner has presented no evidence that his victim ever used or maintained the email account from which this correspondence was sent. Petitioner has likewise presented no other evidence that his victim authored this correspondence. Thus, this correspondence fails to call into doubt Petitioner's conviction for first degree criminal sexual conduct. Moreover, even putting aside such questions of authentication, this correspondence does not advance Petitioner's cause.

8

Under Michigan law, in effect during the time period presently relevant, a person was guilty of first degree criminal sexual conduct if he "engages in sexual penetration with another person and...causes personal injury to the victim and force or coercion is used to accomplish sexual penetration." Mich. Comp. Laws § 750.520b(1)(f). Under Michigan law, "personal injury" is defined to include pregnancy. *See People v. Williams*, 2005 WL 119777 at *2 (Mich. Ct. App., Jan. 20, 2005) (quoting Mich. Comp. Laws § 750.520a(1)). Petitioner does not dispute that he sexually penetrated his victim causing her to become pregnant.

As for whether Petitioner used force or coercion, the correspondence in question fails to support Petitioner's position. The author asserts that she "didn't actually consent" and "tried to get him to stop but he didn't want to." The author further asserts that "On April 4, 2004 I did tell him no and he didn't listen. I didn't fight him though because I didn't want to deal with his anger." Thus, this correspondence actually supports Petitioner's guilty plea, as it describes *at least* one instance in which Petitioner used force or coercion to sexually assault his victim. In sum, the correspondence in question fails to establish (or even call into question) Petitioner's conviction for first degree criminal sexual conduct.

Finally, to the extent that Petitioner asserts that acceptance of his no-contest plea violates his constitutional rights, such claim is without merit. A plea is valid if it is made "knowingly, voluntarily, and intelligently." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also*, *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (to be valid, a guilty plea must be made "voluntarily and intelligently," with "knowledge of the relevant circumstances and likely consequences"). Determining whether a plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea."

9

*Dutton*, 17 F.3d at 153. To prevail on his claim, Petitioner must demonstrate "such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment." *Ray v. Cockrell*, 2003 WL 22070892 at *3 (N.D. Tex., Feb. 27, 2003) (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)); *Thomas v. Cain*, 2007 WL 2874778 at *13 (W.D. La., Sept. 7, 2007) (same).

Respondent bears the burden of establishing that Petitioner's guilty plea was voluntary, intelligent, and knowing. *See Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004) (*reversed in part on other grounds* 545 U.S. 175 (2005)). This burden is generally satisfied "by producing a transcript of the state court proceeding," because "[a] state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing." *Stumpf*, 367 F.3d at 600 (citing *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993)).

Before accepting Petitioner's plea, the trial judge engaged in a lengthy discussion with Petitioner regarding the nature of the crimes to which he was agreeing to plead no contest, including the potential punishment if convicted thereof, as well as the precise nature of the rights he was surrendering by pleading guilty. (Plea Transcript, Feb. 4, 2005, 20-26). Petitioner acknowledged on the record that he understood that by pleading guilty he was surrendering the following rights: (1) the right to a trial, either by the court or a jury, (2) the right to be presumed innocent until proven guilty beyond a reasonable doubt, (3) the right to have the witnesses against him appear at trial, (4) the right to question the witnesses against him, (5) the right to compel the attendance at trial of any witness on his own behalf, (6) the right to remain silent at trial, (7) the right to not have any such silence used against him at trial, and (8) the right to testify at trial. (Tr. 23).

10

Petitioner acknowledged that by pleading no contest he was "giving up any claim that [his] two pleas of no contest were the result of any promises or threats that were not disclosed to the Court at this plea proceeding or that it was not your own free choice to enter the pleas of no contest." (Tr. 23-24). Petitioner acknowledged that he understood that by pleading guilty to first degree criminal sexual conduct he could be imprisoned for "a maximum possible sentence of life in prison or any term of years in prison." (Tr. 20). Petitioner also acknowledged that he understood that by pleading guilty to second degree criminal sexual conduct he could be imprisoned for "a maximum possible sentence of 15 years in prison." (Tr. 20).

The record contains no evidence that Petitioner was "confused" regarding the crimes to which he agreed to plead no contest. The precise nature of the plea agreement was clearly explained to Petitioner, who acknowledged his understanding thereof. The potential punishment for such was also clearly explained to Petitioner. In sum, the record contains no evidence that Petitioner's pleas were not made knowingly, intelligently, and voluntarily.

Accordingly, for the reasons discussed above, the Court recommends that this particular claim is without merit and be denied.

B.      Adjournment of Sentence

At sentencing, Petitioner's counsel moved for an adjournment because he "need[ed] more time" to discuss with Petitioner and his family several sentencing-related issues, including the aforementioned correspondence and Petitioner's sentencing guideline score. The trial judge denied counsel's request. Petitioner asserts that the trial judge's decision constitutes an abuse of discretion. Petitioner, however, has failed to articulate, and the Court fails to discern, any compelling or

11

legitimate reason for the trial judge to have granted Petitioner's motion for adjournment.

The alleged correspondence from the victim was dated more than two months prior to the sentencing proceeding and there is no evidence that existence of such was hidden from counsel. Also, as discussed above, the correspondence in question is of little, if any, significance in this matter. Furthermore, while Petitioner asserts that he wanted an adjournment to discuss his sentencing guideline score, Petitioner did not argue at sentencing that his guideline score was incorrect, only that it was slightly higher than anticipated.

Petitioner does not assert that the trial judge's decision violated his rights under the Constitution or federal law. As previously noted, however, Petitioner can obtain habeas relief only if he demonstrates that he is being confined in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254. Petitioner has failed to articulate, and the Court fails to discern, how the trial judge's decision to deny his request for an adjournment violated his rights under the Constitution or federal law. Accordingly, the undersigned recommends that this particular claim is without merit and be denied.

**II.        Ineffective Assistance of Counsel**  (Habeas Claim III)

Petitioner asserts that his trial counsel, immediately upon learning of the correspondence discussed above, should have "immediately filed for a withdrawal of the plea." Petitioner asserts that the failure to do so constitutes ineffective assistance of counsel.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). In the context of a plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Thus, to satisfy the prejudice requirement, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [no contest] and would have insisted on going to trial." *Railey*, 540 F.3d at 415 (6th Cir. 2008) (quoting *Lockhart*, 474 U.S. at 58-59).

Petitioner's claim is based on his assertion that the correspondence in question renders invalid his conviction for first degree criminal sexual conduct. As discussed above, this argument is without merit. As previously noted, when asked at sentencing whether he wished to withdraw his no-contest pleas, Petitioner declined and instead stated that he wished to proceed pursuant to the terms of his plea agreement. Petitioner has failed, therefore, to establish that he was prejudiced by his attorney's alleged error. Accordingly, the undersigned recommends that this claim be rejected.

**III.      Re-Sentencing Claim**  (Habeas Claim IV)

In his fourth habeas claim, Petitioner asserts that if he is permitted to withdraw his plea to the first degree criminal sexual conduct charge, he must be re-sentenced on the conviction for second degree criminal sexual conduct. Specifically, Petitioner asserts that if his conviction for first degree criminal sexual conduct is vacated, the resulting sentencing guideline score would result in a lesser sentence than that imposed for the second degree criminal sexual conduct conviction.

As discussed above, Petitioner has failed to establish that his no contest plea to the first degree criminal sexual conduct charge violated his rights under the Constitution or federal law or was in any way improper. Thus, Petitioner has failed to demonstrate that his conviction for first degree criminal sexual conduct is invalid. Moreover, to the extent that Petitioner is challenging the computation of his sentencing guideline score, such is not cognizable in a federal habeas action. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir., Oct. 26, 2007) (petitioner's "challenges to the trial court's application of Michigan's sentencing guidelines also raises issues of state law not cognizable on habeas review").

Finally, to the extent that Irish's petition is interpreted as asserting that his sentences violate the Eighth Amendment, such claims are without merit. The Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence." *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Layne*, 324 F.3d at 473. When a court assesses whether a sentence imposed by a state court satisfies the Eighth Amendment's "limited guarantee of proportionality," it must "grant substantial deference to the. . .legislatures. . .in determining the types and limits of

punishments for crimes." *Id.* at 473-74. Accordingly, "a sentence within the maximum set by statute generally does not constitute cruel and unusual punishment." *Id.* at 474. Petitioner's sentences do not exceed the maximum sentences established by Michigan law and cannot reasonably be considered disproportionate to the crimes Petitioner admitted committing. *See* Mich. Comp. Laws §§ 750.520b, 750.520c. The undersigned, therefore, recommends that this claim be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Irish's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 8, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge